NORDBERG MANUFACTURING COMPANY and another, Appellants, vs. INDUSTRIAL COMMISSION and others, Respondents.

*November 10, 1932—February 7, 1933.*

*Thomas E. Torphy* of Milwaukee, for the appellants.

For the respondents Industrial Commission and John Sanger there was a brief by the *Attorney General, Mortimer Levitan,* assistant attorney general, and *L. A. Tarrell* of Milwaukee, and oral argument by *Mr. Levitan* and *Mr. Tarrell.*

For the respondents North End Foundry Company and Travelers Insurance Company there was a brief by *Olin & Butler,* and oral argument by *Byron H. Stebbins,* all of Madison.

For the respondent Filer & Stowell Company there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Arthur B. Doe* of counsel, all of Milwaukee, and oral argument by *Mr. Doe.*

For the respondent London Guarantee and Accident Company there was a brief by *Riley & Ohm* of Madison, and oral argument by *Miles C. Riley.*

The following opinion was filed December 6, 1932:

OWEN, J.    The Industrial Commission of Wisconsin made an award of workmen's compensation in favor of John Sanger and against his employer the Nordberg Manufacturing Company and its insurance carrier, American Employers' Insurance Company.   The award was based upon disability resulting from an occupational disease.   Sanger was a core maker, and since 1900 worked at that trade in foundries.   Such employment required him to work in a dusty atmosphere and to breathe dust, which led to the contraction by him of the disease of tuberculosis superimposed on pneumoconiosis.   He worked for the North End Foundry Company intermittently from December 23, 1924, to October 8, 1928.   On the latter date he left the employment of that company because he was dissatisfied with the work as-

signed to him, although prior to this date, while in the employ of the North End Foundry Company, he had noticed weakness and shortness of breath, according to the finding of the Industrial Commission. After he quit the North End Foundry Company October 8, 1928, although he was not working in a foundry, he did not feel well, and about Christmas time he consulted a physician, as a result of which he was sent to the county hospital, where he remained for a short period. On January 3, 1929, he secured work with the Filer & Stowell Company as a core maker, and remained there until January 14, 1929, when he was discharged. On February 20, 1929, he was admitted to Muirdale Sanitarium. At the Muirdale Sanitarium his trouble was diagnosed as an advanced type of pulmonary tuberculosis superimposed on pneumoconiosis. He was discharged from Muirdale Sanitarium on June 21, 1929, as an apparently arrested case. An apparently arrested case of tuberculosis is a case which at the time shows no clinical symptoms but in which the absence of clinical symptoms has not persisted for a sufficient length of time so that the case can be considered as arrested. An apparently arrested case may in time become an arrested case, or the patient may again develop clinical symptoms of the disease. Whether future progress is towards absolute recovery or a recurrence depends in no little degree upon the surroundings of the patient and the atmosphere to which he is subjected.

On July 2d, after his discharge from the sanitarium, Sanger secured employment at his trade as a core maker with the Nordberg Manufacturing Company, where he continued at work until the 25th day of November, 1929, at which time he was laid off, due to a slackness of work. While working during this period he lost weight, developed a bad cough, which became worse, and he testified that he would have had to suspend work anyway if he had not been laid off, because he did not feel able to continue at work.

The Industrial Commission found that on the 25th day of November, 1929, Sanger, while performing services growing out of and incidental to his employment, sustained an injury in the nature of an occupational disease contracted by him as a proximate result of his employment with said respondent employer, and made an award in favor of Sanger and against Nordberg Manufacturing Company and its insurance carrier.

Upon the appeal here, the finding that the employee sustained the injury, as found by the Industrial Commission, is not challenged, but it is contended that the injury found to have been sustained was but a recurrence of a former attack sustained by Sanger when he was in the employ of the North End Foundry Company.

It may be conceded that when Sanger went to the Muirdale Sanitarium he was suffering from tuberculosis which resulted from the following of his trade as a core maker. However, there is no evidence in the case to justify or at least to compel a conclusion that he sustained a compensable injury at any time while in the employ of former employers. He did not quit work upon any former occasion by reason of disability resulting from tuberculosis. When he first consulted a physician about Christmas, 1929, he was not in the employ of any one. When he went to work for the Filer & Stowell Company during January, 1929, he worked without cessation until he was laid off.

The workmen's compensation act deals with compensable injuries, and under the provisions of sec. 102.03, Stats., the injury, to be compensable, must occur when "the employee is performing service growing out of and incidental to his employment." The contention here is, that under the rule laid down by this court in *Zurich General Acc. & L. Ins. Co. v. Industrial Comm.* 203 Wis. 135, 233 N. W. 772; *Outboard Motor Co. v. Industrial Comm.* 206 Wis. 131, 239 N. W. 141; and *Marquette Granite Co. v. Industrial Comm.*

207 Wis. 151, 240 N. W. 793, it was incumbent upon the Industrial Commission to determine whether the disability which it found occurred on November 25, 1929, was a mere recurrence of a former attack or was a new onset. In order to make that determination essential or appropriate, it was necessary for the record to disclose a prior attack resulting in compensable disability. The rule of these cases is not for the purpose of denying the injured workman compensation, but for the purpose of determining what employer should bear the burden of making compensation. For aught that appears in this record, there was no former employer liable for compensation, for the reason that Sanger sustained no injury where, at the time of *the* injury, he was performing service for any other employer. It seems to be conceded by every one connected with this case that the short period of time during which Sanger was in the employ of the Filer & Stowell Company for a few days in January, 1929, and also in January, 1930, did not substantially contribute to his injury and, at any rate, he did not sustain a compensable injury while in the employ of that company. The mere fact that Sanger had a former attack does not deny him compensation. Whether or not he had a former attack is material only upon the consideration of which employer shall bear the burden of compensation. Where there was no former attack under circumstances giving rise to liability of a former employer to pay compensation, and such appears to be the case here, the question of whether he had a former attack is wholly immaterial.

This court recognized, in *Wisconsin Granite Co. v. Industrial Comm.* 208 Wis. 270, 242 N. W. 191, that in order to entitle the employee to compensation it was necessary that the injury be sustained by the employee at a time when the relation of employer and employee obtained, and it was held in that case that under some circumstances that relation

might be found to exist for the purpose of awarding compensation for occupational disease when the employee was not actually rendering service. However, from the record in this case it conclusively appears that such former attacks as Sanger may have had did not occur at a time when the relation of employer and employee existed between him and any employer.

We take this occasion to emphasize again, as we have many times in the past, that the right of an employee to compensation for an occupational disease hangs by a slender thread, in view of the very cursory statutory provisions upon which that right must rest. It has required no little judicial ingenuity to save the right in many cases where the legislature seemed to intend compensation to be paid. It is realized full well here that most any time judicial ingenuity will be baffled, and there may come a time when a worthy employee must go uncompensated because of the failure of the legislature to grapple with the subject in a specific and definite way.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on February 7, 1933.